**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**NORTHWEST DIRECT TELESERVICES, INC.,**

**Plaintiff,**

**v.**

**TOUCHSTAR SOFTWARE CORP. and KAYNE ANDERSON INVESTMENT MANAGEMENT, INC.,**

**Defendants.**

**09-CV-375-BR**

**OPINION AND ORDER**

**JEFFREY M. EDELSON**
**KERRY J. SHEPHERD**
**PAUL S. BIERLY**
Markowitz Herbold Glade & Mehlhaf, P.C.
1211 S.W. Fifth Ave., Suite 3000
Portland, OR 97204
(503) 295-3085

Attorneys for Plaintiff

**JULIE ANNETTE SMITH**
**SUSAN K. EGGUM**
Cosgrave Vergeer Kester
805 S.W. Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on the Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue (#15) to Colorado filed by Defendant TouchStar Software Corporation. For the reasons that follow, the Court **GRANTS** TouchStar's Alternative Motion to Transfer Venue.

**FACTUAL BACKGROUND**

Plaintiff Northwest Direct Teleservices, Inc. (NDT) alleges the following facts in its Complaint.

NDT is an Oregon corporation with its principal place of business in Clackamas County. NDT provides telephone-based marketing services from its call centers.

TouchStar is a Delaware corporation with its principal place of business in Aurora, Colorado. TouchStar is a successor in interest to Data-Tel Info Solutions, an Arizona company with its principal place of business in Mesa, Arizona. TouchStar sells and services proprietary call-center software and predictive dialers for inbound and outbound communications.

Defendant Adam Michelin is the Chief Restructuring Officer of TouchStar and a resident of California.

In early January 2008, NDT purchased from Data-Tel for $250,000 a complete teleservices system for the purpose of managing NDT's inbound and outbound call-center traffic, including hardware, software, installation, and technical support. The terms of the contract required the final payment to be made upon NDT's satisfaction with the system. NDT paid Data-Tel $162,500 toward the contract price. NDT, however, lost business and suffered contractual penalties with its customers because the system did not perform as promised. NDT and Data-Tel were in the process of negotiating damages for Data-Tel's failure to perform under the agreement when Data-Tel was acquired by TouchStar.

After acquiring Data-Tel, TouchStar assured NDT it would take care of the Data-Tel system's problems and later informed NDT that the system installed by Data-Tel was not robust enough to meet NDT's needs. Accordingly, TouchStar recommended NDT install TouchStar's proprietary system because it had substantially more features and functionality.

In May 2008 TouchStar and NDT entered into an Agreement. Under the Agreement, TouchStar credited to NDT the $162,500 that NDT had paid to Data-Tel and gave NDT an additional credit for $152,760 for the damages suffered by NDT because of the failure

of the Data-Tel system. TouchStar agreed to provide its proprietary system to NDT, which included software and software licenses, hardware, installation, and technical support. The centerpiece of the installation was to be TouchStar's "Enterprise Server," which TouchStar stated would support up to 192 agent call-stations and 22 administrative stations from one location. In return, NDT paid TouchStar $40,000 and promised to pay an additional $47,500 contingent on NDT's satisfaction with the new system. As part of the Agreement, NDT committed to a three-year maintenance contract and relinquished its Data-Tel software licenses in exchange for TouchStar software licenses.

The Agreement also a contains forum-selection clause, which provides:

> This Agreement shall be governed by and interpreted in accordance with the laws of the State of Colorado without reference to Colorado conflicts of law principles. TouchStar and Customer agree that the Federal courts of the United States and the state courts of Colorado, located in Denver, Colorado, shall have exclusive jurisdiction over any litigation with respect to this Agreement and, by execution of this Agreement, TouchStar and Customer irrevocably submit to such jurisdiction.

TouchStar did not deliver or install the Enterprise Server as promised, but instead installed a system that required a server at each of NDT's two call-centers. Ultimately NDT concluded the TouchStar system was inferior to the system already in place at its Iowa call-center and, therefore, only deployed

the TouchStar system to its Oregon call-center. As a result NDT is using only one server and half of the licenses for which it contracted. Moreover, NDT has found the TouchStar system to be unstable with unpredictable disruptions in service.

As a result, NDT has withheld its final payment of $47,500 until TouchStar provides a stable system that meets the terms of the Agreement and NDT's reasonable expectations of performance. In response, TouchStar has threatened to pull 48 software licenses, including some at NDT's Oregon call-center, unless NDT pays the balance owed. If TouchStar pulls the licenses, NDT's system would cease to function and NDT would be forced to shut down the call-center.

## **PROCEDURAL BACKGROUND**

On April 13, 2009, NDT filed a Complaint in this Court on the basis of diversity jurisdiction alleging contract claims and requesting declaratory and injunctive relief. On April 27, 2009, NDT filed its First Amended Complaint in which it alleges (1) breach of contract, (2) breach of covenant of good faith and fair dealing, and (3) fraud against TouchStar. NDT also alleges a claim for fraud against Kayne Anderson Investment Management and Michelin, and, in addition, requests declaratory and injunctive relief against all Defendants.

Also on April 27, 2009, NDT filed a Motion for Temporary

Restraining Order (TRO) and to Show Cause Why Preliminary Injunction Should Not Issue. NDT requested an order requiring TouchStar to convert the licenses covered in the Agreement to permanent licenses, prohibiting TouchStar from randomly revoking any licenses, and prohibiting TouchStar from entering into an agreement for the sale of TouchStar's assets. The parties conferred out of court regarding NDT's Motion, and on May 8, 2009, NDT amended its Motion to withdraw the request for a TRO in exchange for TouchStar extending its software licenses until at least ten days after the Court held a hearing on NDT's Motion for Preliminary Injunction. The Court scheduled a hearing on NDT's Motion for Preliminary Injunction for July 8, 2009.

In the meantime, however, on May 13, 2009, TouchStar filed a Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue to Colorado. Then Michelin filed a Motion to Dismiss (#29) for Lack of Personal Jurisdiction and Improper Venue on June 2, 2009.

After conferring with counsel during a scheduling conference on June 5, 2009, the Court struck the July 8, 2009, hearing on Plaintiff's Motion for Preliminary Injunction because the Court concluded the Motions to Dismiss needed to be resolved before NDT's Motion for Preliminary Injunction could be addressed. Because the Court struck the hearing date for a Preliminary Injunction, the date after which the parties agreed the software

licenses would become infirm needed to be adjusted, and the parties agreed to extend the software licenses to July 30, 2009.

On June 26, 2006, the parties stipulated to dismissal of NDT's claims against Michelin, and, therefore, his Motion to Dismiss is moot.

On July 7, 2009, the Court heard oral argument on TouchStar's Motion to Dismiss for Improper Venue. At oral argument, NDT indicated if the Court were to transfer the matter to Colorado, NDT would like the Court to order TouchStar to preserve the status quo with respect to the software licenses until a motion for preliminary injunction could be decided on the merits in Colorado. Accordingly, the Court requested the parties to confer, and, if agreeable, to craft language that would maintain the status quo with respect to the software licenses during any time period necessary to transfer the matter to Colorado. The parties were unable to reach such an agreement in part because TouchStar entered into receivership on June 18, 2009. The Court has not found, nor have the parties provided, any authority that would allow it to enjoin Touchstar *sua sponte* from revoking the software licenses until the issue of a preliminary injunction has been resolved.

## STANDARDS

The parties dispute the standard under which the Court must

resolve TouchStar's Motion to Dismiss for Improper Venue. TouchStar contends this Court should follow *M/S Bremen v. Zapata Off-Shore Co.* in which the Supreme Court found forum-selection clauses are presumptively valid and enforceable. 407 U.S. 1, 12 (1972). According to NDT, however, the Supreme Court in *Stewart Organization, Inc. v. Ricoh Corp.*, a more recent Supreme Court case, held the rule expressed in *Bremen* applies only in cases that involve claims under admiralty law. 487 U.S. 22 (1998). Thus, NDT asserts pursuant to *Stewart* that a federal court sitting in diversity should analyze TouchStar's Motion as a motion to transfer venue pursuant to 28 U.S.C. § 1404.

The Court notes the Ninth Circuit has considered the Supreme Court's holding in *Bremen* in light of *Stewart*. The Ninth Circuit concluded the rule set forth in *Bremen* controls the analysis of motions to dismiss for improper venue based on forum-selection clauses. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 388 n.9 (1990). *See also Manetti-Farrow v. Gucci Am., Inc.*, 858 F.2d 509, 512 n.2 (1988). "Although [*M/S*] *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general." *Argueta*, 87 F.3d at 325 (citing *Spradlin v. Lear Siegler Mgmt. Servs Co.*, 926 F.2d 865, 867 (1991)). Accordingly, "[a] forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude

the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009)(citing *Bremen*, 407 U.S. 1, 17 (1972)).

In addition, a motion to dismiss for improper venue that is premised on a forum selection clause "is treated as a motion to dismiss pursuant to Rule 12(b)(3)." *Id*. When deciding a motion to dismiss based on a forum-selection clause, "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Id*. (citing *Argueta v. Banco Mexicano*, 87 F.3d 320, 325 (1996)). "[I]n the context of a Rule 12(b)(3) motion based upon a forum-selection clause, the trial court must draw all reasonable inferences in favor of the nonmoving party and resolve all factual conflicts in favor of the nonmoving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).

"Forum-selection clauses can be equally applicable to contractual and tort causes of action." *Manetti-Farrow*, 858 F.2d at 514. Federal law applies to the interpretation of the forum-selection clause. *Doe 1*, 552 F.3d at 1083 (citing *Manetti-Farrow*, 858 F.2d at 513).

## **DISCUSSION**

NDT contends Oregon is the proper venue for this matter because TouchStar waived its right to rely on the forum-selection clause and, in any event, the clause is unenforceable in this case even if TouchStar had not waived its right to rely on the

clause.

**I. TouchStar did not waive its right to rely on the forum-selection clause of the Agreement.**

NDT contends TouchStar waived its right to rely on the forum-selection clause because TouchStar engaged in an out-of-court course of action that, according to NDT, constitutes TouchStar's "first defensive maneuver" under Federal Rule of Civil Procedure 12.

"The essence of Rule 12 . . . is that a party 'who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses [personal jurisdiction, improper venue, insufficient process, or insufficient service] he then has and thus allow the court to do a reasonably complete job.'" *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000)(quoting Fed. R. Civ. P. 12 advisory committee's note, 1966 Amendment, subdivision (h)). Thus, if a defendant raises any Rule 12 defense in its first filing in the case, it is obliged to raise all of those defenses specified in Rule 12(h) or waive them. *Id.*

NDT asserts TouchStar agreed in out-of-court negotiations not to revoke its software licenses in exchange for NDT's withdrawal of its Motion for Temporary Restraining Order, which "lulled" NDT into believing venue would not be an issue. Improper venue, however, "is waived under Rule 12 only if a defendant moves to dismiss on one or more of the other grounds

specified by Rule 12 while failing to raise venue in the same motion." *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992). *See also Hendricks v. Bank of Am.*, 408 F.3d 1127, 1135 (9th Cir. 2005)(venue defenses not waived when raised "in a timely manner in a first responsive pleading after securing several reasonable extensions of the filing deadline"); *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986).

Here TouchStar's first filing was merely a request for an extension of time for the purpose of filing a Motion to Dismiss for Improper Venue. In addition, even though NDT persistently contends TouchStar's out-of-court conduct was a "first defensive maneuver," NDT has not provided any authority that would relieve this Court from following Ninth Circuit precedent that prevents the Court from concluding that TouchStar's conduct constitutes a waiver of TouchStar's venue defense.

On this record, the Court concludes TouchStar did not waive its right to rely on the forum-selection clause.

**II. The forum-selection clause is enforceable.**

NDT also contends the forum-selection clause is unenforceable because the Agreement was the product of fraud and overreaching.

As noted, a "forum selection clause is *prima facie* valid and enforceable." *Hendricks*, 408 F.3d at 1137 (citing *Bremen*, 407 U.S. at 10). There are only three circumstances under which a

forum-selection clause is unenforceable:

> (1) [I]f the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; or (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.

*Murphy*, 362 F.3d at 1140 (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998))(quotation marks omitted).

NDT asserts the Agreement as a whole is the product of fraud and overreaching on the ground that TouchStar induced NDT to enter into the Agreement by making misrepresentations about its product and, in addition, that NDT was under duress at the time the parties entered into the Agreement because the Data-Tel system was not working.

"For a party to escape a forum-selection clause on the grounds of fraud, it must show that '*the inclusion of that clause in the contract* was the product of fraud or coercion." *Richards*, 135 F.3d at 1294 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967))(emphasis in original). Here the record does not support an inference that the forum-selection clause itself was the product of fraud.

As noted, NDT also alleges the Agreement as a whole was the product of overreaching. In *Murphy*, the Ninth Circuit concluded a forum-selection clause in an employment agreement was not the product of overreaching even when the contract at issue was

nonnegotiable and the product of unequal bargaining power. The court stated: "[T]o decline enforcement of a forum-selection [clause] merely on the showing of nonnegotiability and power difference would disrupt the settled expectations of the parties." *Murphy*, 362 F.3d at 1141. Here the record does not reflect the Agreement was nonnegotiable nor that it was a contract of adhesion. NDT has, at most, alleged facts giving rise to an inference of unequal bargaining power between the parties because of NDT's particular situation at the time. As noted, however, an inference of unequal bargaining power is not sufficient under *Murphy* "to overcome the strong presumption in favor of enforcing forum-selection clauses." *Id.*

Nonetheless, even if the Court were to undertake its analysis under the fairness factors of 28 U.S.C. § 1404(a) as urged by NDT, NDT still does not make a compelling case to proceed with this matter in Oregon in light of the forum-selection clause in the Agreement and the location of witnesses and TouchStar's corporate headquarters in Colorado.

On this record, the Court concludes NDT has not shown the forum-selection clause is unenforceable as the product of fraud or overreaching. The Court also concludes, in the exercise of its discretion, that it is appropriate to transfer this matter to the United States District Court for the District of Colorado in the interests of justice, judicial economy, and preservation of

the resources of both parties.

## CONCLUSION

For these reasons, the Court **GRANTS** TouchStar's Alternative Motion (#15) to Transfer Venue and **TRANSFERS** this matter to the United States District Court for the District of Colorado.

Because it does not appear the Court has any *sua sponte* authority to restrain TouchStar while the transfer to Colorado ensues, the Court declines to do so. The Court, however, encourages Plaintiff to bring this matter promptly to the attention of the Colorado District Court if circumstances warrant.

IT IS SO ORDERED.

DATED this 14th day of July, 2009.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge